UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

STATES OF NEW YORK, CALIFORNIA,
COLORADO, CONNECTICUT, ILLINOIS, MAINE,
MARYLAND, MINNESOTA, NEW JERSEY,
OREGON, VERMONT, WASHINGTON, THE
COMMONWEALTH OF MASSACHUSETTS, THE
PEOPLE OF THE STATE OF MICHIGAN, THE
DISTRICT OF COLUMBIA, AND THE CITY OF
NEW YORK,

                                         Plaintiffs,

                    v.

DAN BROUILLETTE, as SECRETARY OF THE
UNITED STATES DEPARTMENT OF ENERGY,
and UNITED STATES DEPARTMENT OF
ENERGY,

                                         Defendants.
_____

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**


Case No. 20-cv-9362


## INTRODUCTION

1.      Plaintiffs, the States of New York, California, Colorado, Connecticut, Illinois,

Maine, Maryland, Minnesota, New Jersey, Oregon, Vermont, Washington, the Commonwealth

of Massachusetts, the People of the State of Michigan, the District of Columbia and the City of

New York, (collectively plaintiffs), representing over 111 million people of the United States,

bring this action to challenge the failure of the United States Department of Energy (DOE) and

its Secretary, Dan Brouillette (collectively DOE) to meet federal statutory deadlines for

reviewing and strengthening energy efficiency standards under the Energy Policy and

Conservation Act (EPCA or the Act), Subchapter III, 42 U.S.C. §§ 6291-6317, as amended.

2.      EPCA authorizes national energy conservation standards for a variety of

consumer and commercial products and industrial equipment. Among other things, EPCA

establishes initial minimum energy efficiency standards for covered products and requires DOE

to prescribe new or amended standards by rulemaking. To ensure that standards are set at the

maximum efficiency level that is technologically feasible and economically justified, EPCA

mandates that DOE meet certain deadlines for periodic review and revision of those standards.

*See* 42 U.S.C. §§ 6295(m)(1), 6313(a)(6), 6316(a).

3.      Today, energy efficiency standards established under EPCA cover more than 60

categories of residential and commercial products and commercial equipment. Together, these

products use about 90 percent of the total amount of energy consumed in homes in the United

State, 60 percent of the energy used in the country's commercial buildings, and 30 percent of

the energy used in our nation's industries.

4.      The energy conservation standards program for consumer appliances and

commercial equipment developed under EPCA has been highly effective in improving our

nation's energy efficiency, saving consumers, businesses and governments money, and avoiding

emissions of greenhouse gases and other air pollutants. DOE estimates that, by 2030, efficiency

standards adopted through 2016 will save more energy than the entire nation consumes in one

year and will save consumers more than $2 trillion on their utility bills. Reduced energy use also

avoids emissions of harmful air pollutants, including those that contribute to climate change.

According to DOE, existing standards will avert emissions of more than 7.9 billion metric tons

of carbon dioxide ($CO_2$), an amount greater than all United States greenhouse gas emissions

generated in a year.

5.      Despite Congress' explicit directive that DOE regularly evaluate existing

efficiency standards to determine whether such standards can be made stronger, DOE has

missed EPCA's deadlines for reviewing and updating efficiency standards for 25 consumer and

commercial or industrial product categories. A list of these products is attached to the Complaint as Attachment 1.

6.      According to energy experts, updated standards for these 25 product categories could save over $580 billion in energy costs and avoid over two billion metric tons of $CO_2$ emissions by the year 2050.

7.      DOE's failure to meet its statutory deadlines deprives plaintiffs, their residents and their businesses of the many benefits updated standards would provide, including conservation of natural resources, lower energy bills, a more reliable electricity grid, and reduced emissions of harmful air pollutants that contribute to climate change and threaten public health.

8.      DOE's unlawful delay requires prompt, appropriate redress from this Court.

9.      In EPCA's citizen suit provision Congress conferred on this Court the explicit authority to order prompt relief that secures DOE compliance with statutory deadlines for reviewing and amending existing standards. *See* 42 U.S.C. § 6305(a).

10.      Accordingly, plaintiffs request that this Court order the following relief: (a) issue a declaratory judgment pursuant to 28 U.S.C. § 2201(a) stating that DOE has failed to meet deadlines specified under EPCA for reviewing and updating energy efficiency standards for the 25 categories of products described in this complaint; and (b) issue a permanent injunction pursuant to 28 U.S.C. § 2202 and 42 U.S.C. § 6305(a) requiring DOE to comply with its statutory deadlines and other requirements for such products according to an expeditious schedule to be determined and enforced by this Court.

## JURISDICTION, PRE-SUIT NOTICE, AND VENUE

11.     This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 6305(a)(2), (3) (EPCA's citizen suit provision); 28 U.S.C. §§ 1331 (federal question), 2201 (declaratory judgment), 2202 (injunctive relief), 1361 (mandamus relief), and 1346(a)(2) (civil action against the United States); and 5 U.S.C. §§ 702 and 706 (scope of review).

12.     DOE's failure to comply with EPCA's statutory deadlines is a failure to perform a non-discretionary duty and is subject to judicial review, 42 U.S.C. § 6305(a)(2), (3).

13.     DOE's failure to comply with its statutory deadlines is also agency action unreasonably delayed and unlawfully withheld, subject to judicial review pursuant to the Administrative Procedure Act (APA), 5 U.S.C. §§ 702, 706.

14.     To the extent notice is required with respect to any of the claims herein, on August 10, 2020, plaintiffs sent to the DOE Secretary, with a copy to the Federal Trade Commission (FTC), a 60-day notice of intent to sue, based on DOE's failure to comply with its non-discretionary duty to meet specified deadlines for reviewing and updating efficiency standards for 25 consumer and commercial product categories. A copy of the notice is attached as Attachment 2.

15.     More than 60 days have passed since plaintiffs sent the notice letter, and DOE has yet to fulfill its mandatory obligations.

16.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(e) because defendants are an officer and an agency of the United States and two plaintiffs, the State of New York and the City of New York, reside in this district.

## PARTIES

Plaintiffs

17.    The States of New York, California, Colorado, Connecticut, Illinois, Maine, Maryland, Michigan, Minnesota, New Jersey, Oregon, Vermont, Washington, and the Commonwealth of Massachusetts are each sovereign entities that bring this action on their own behalf to protect state property, on behalf of their citizens and residents to protect their health and well-being, and to protect natural resources held in trust by each respective state.

18.    The District of Columbia is a municipal entity that brings this action on its own behalf to protect District property and on behalf of its residents to protect their health and well-being.

19.    The City of New York is a municipal entity that brings this action on its own behalf to protect City property and on behalf of its residents to protect their health and well-being.

Plaintiffs' Interests

20.    Plaintiffs have significant proprietary and sovereign interests in updated energy efficiency standards, as well as the economic and environmental benefits such standards confer. Improved energy efficiency benefits consumers, businesses and governments by decreasing energy consumption, lowering energy bills and increasing energy reliability.

21.    Energy efficiency standards also reduce air pollution that is harmful to public health and the environment, such as $CO_2$ and other gases that contribute to climate change. Because increased energy efficiency avoids unnecessary greenhouse gas emissions associated with the burning of fossil-fuels, improving efficiency is a key part of plaintiffs' strategies to combat climate change.

22.    Therefore, plaintiffs rely on national energy efficiency standards to complement

their policies for affordable, reliable and clean energy. DOE's failure to meet EPCA deadlines for updating energy efficiency standards for the 25 product categories that are the subject of this Complaint harms plaintiffs by delaying the benefits of improved standards. In the absence of a declaratory judgment and permanent injunction requiring DOE to comply with its mandatory duties, DOE's delay will likely continue to cause harm to the plaintiffs.

23.     Plaintiffs have a history of significant engagement in energy efficiency issues, including participating in litigation to ensure DOE's compliance with EPCA's statutory deadlines and other rulemaking requirements. *See*, *e.g.*, *New York v. Bodman*, Nos. 05-7807, 7808 (S.D.N.Y. 2005) (multistate action to compel DOE compliance with statutory rulemaking deadlines for energy efficiency standards covering over 20 product categories); *New York v. USDOE*, No. 19-3652 (2d Cir. 2019) (multistate challenge to DOE withdrawal of definitional rules expanding scope of light bulb efficiency standards); *New York v. USDOE*, No. 20-743 (2d Cir. 2019) (multistate challenge to DOE determination not to increase stringency of light bulb efficiency standards); *NRDC v. Perry*, 940 F.3d 1072 (9th Cir. 2019) (multistate action to compel DOE publication of four final efficiency standards); *AHRI v. DOE*, No. 20-1068 (D.C. Cir. 2020) (multistate intervention in support of DOE standard for commercial packaged boilers); *New York v. Bodman*, Nos. 08-0311, 0312 (2d Cir. 2008) (multistate action challenging DOE efficiency standards for furnaces); *NRDC v. Abraham*, 355 F.3d 179 (2d Cir. 2004) (multistate challenge to DOE adoption of less stringent efficiency standards for central air conditioners); *NRDC v. Herrington*, 768 F.2d 1355 (D.C. Cir. 1985) (multistate challenge to DOE determination not to adopt efficiency standards). Plaintiffs also have participated in DOE's energy standards program rulemakings by submitting comments urging DOE to focus its resources on meeting EPCA deadlines for reviewing and updating standards instead of diverting its resources on discretionary

rulemaking. *See*, *e.g.,* Multistate Comments in Response to DOE's Prioritization Process (May 15, 2020) *available at* https://www.regulations.gov/document?D=EERE-2020-BT-STD-0004-0014.

24.     Up-to-date, national energy efficiency standards are important tools in plaintiffs' efforts to combat global climate change and its adverse impacts on public health and safety and the environment.

25.     The wide-ranging impacts of climate change include: increased heat-related deaths and illness, damage to or loss of coastal areas due to increased flooding and rising sea levels, disrupted ecosystems that can result in loss of habitat and increased vectors for disease, more severe weather events such as hurricanes and storms, longer and more frequent droughts that impair agricultural productivity or contribute to wildfires, loss of biodiversity, and mass migrations of human and animal populations in response to these changes. Rigorous research led by experts at 13 federal agencies has confirmed that climate change is human-caused; that continued growth in emissions of $CO_2$ and other greenhouse gases will produce economic losses across all sectors of the United States' economy; that mitigation measures do not "yet approach the scale considered necessary to avoid substantial damages to the economy, environment, and human health over the coming decades;" and that absent significant increases in global mitigation efforts, "[i]t is very likely that some physical and ecological impacts will be irreversible for thousands of years, while others will be permanent." *See* U.S. Global Change Research Program, "Impacts, Risks, and Adaptation in the United States: Fourth National Climate Assessment, Volume II" (D.R. Reidmiller et al. eds., 2018) at 26, 1347, available at https://nca2018.globalchange.gov/downloads/NCA4_2018_FullReport.pdf (detailing harmful impacts of climate change on region-by-region basis). Future climate change impacts will be

primarily determined by the level of continued emissions of greenhouse gases, including those from power generating plants that supply consumer and commercial products and industrial equipment with energy.

26.     Plaintiffs have adopted state and local laws and policies to address the urgent threat posed by climate change. For example, the State of New York recently enacted the Climate Leadership and Community Protection Act (CLCPA), N.Y. Environmental Conservation Law (ECL) art. 75, which sets a statewide goal to limit greenhouse gas emissions to 60 percent of 1990 levels by 2030, and to 15 percent of 1990 levels by 2050. ECL § 75-0107; *see also* N.Y. Codes R. & Regs. tit. 6, Part 251 ($CO_2$ emission limits for electric generating facilities). On top of these statewide greenhouse gas emission reduction requirements, the CLCPA also requires that 70 percent of New York's electricity come from renewable energy sources by 2030, and that 100 percent of the state's electricity come from carbon-free energy generation sources by 2040. N.Y. Public Service Law § 66-p (2). These ambitious climate change and clean energy targets will require, among other things, transitioning the state's energy infrastructure from fossil-fuel to renewable energy-based technologies combined with significant reductions in residential and commercial energy use. Until such changes are complete, improving the efficiency of consumer appliances and commercial equipment through federally mandated standards is critical to meeting New York's emissions goals.

27.     Other plaintiffs have taken similar actions to reduce greenhouse gas emissions and address climate change. *See*, *e.g*., California Global Warming Solutions Act of 2006 (Assembly Bill 32, Chapter 488, September 27, 2006 and Senate Bill 32, Chapter 249, September 8, 2016); Cal. Health & Safety Code § 38500-38599; Cal. Code Regs. tit. 17, §§ 95801-96022; Colo. Rev. Stat. § 25-7-102(2), § 25-7-105 (1)(e)(I); Conn. Gen. Stat. § 22a-200c

& Conn. Agencies Regs. § 22a-174-31 (implementing nine-state Regional Greenhouse Gas

Initiative); Md. Code Ann., Pub. Util. Cos. § 7-703 (establishing that Maryland will receive 50%

of its electricity from renewable sources by 2030); Mass. Gen. Laws ch. 21N, §§ 3(b), 3(d) &

4(a); 310 Code Mass. Regs. §§ 7.73, 7.74 & 7.75; Minn. Stat. § 216H.02 (setting a goal to reduce

statewide greenhouse gas emissions by at least 80 percent by 2050); Minn. Stat. §§ 216B.1691,

subds. 2a, 2f (establishing renewable energy standards and a goal for each utility to produce 10

percent of electric retail sales from solar energy by 2030); New Jersey Global Warming

Response Act, N.J. Stat. Ann. § 26:2C-37; Or. Rev. Stat. § 469.503(2); 2020 Vt. Acts &

Resolves No. 153 (establishing Vermont Climate Council and requiring Vermont to reduce

greenhouse gas emissions by 80% from 1990 levels by 2050); and Wash. Rev. Code §§

80.80.040 and 19.405.040.

28.     Plaintiffs have also adopted a variety of state and local energy efficiency

programs and initiatives to support affordable and reliable energy. *See*, *e.g.,* NYS Energy

Research Development Agency, Statewide Low- and Moderate-Income Portfolio

Implementation Plan (initiative to increase access to energy efficiency and clean energy solutions

for low-to-moderate income households and affordable multifamily buildings pursuant to NYS

Public Service Commission Matter of a Comprehensive Energy Efficiency Initiative, Case No.

18-M-0084 (Feb. 8, 2018)), *available at*

http://documents.dps.ny.gov/public/MatterManagement/CaseMaster.aspx?MatterSeq=55825&M

NO=18-M-0084; Cal. Pub. Res. Code § 25310 (California Energy Commission to double energy

efficiency savings in electricity and natural gas final end uses by 2030); California Energy

Commission, 2019 California Energy Efficiency Action Plan, *available at*

https://ww2.energy.ca.gov/business_meetings/2019_packets/2019-12-

11/Item_06_2019%20California%20Energy%20Efficiency%20Action%20Plan%20(19 -IEPR-06).pdf; Wash. Rev. Code § 19.285 and § 43.21F.088(1)(a) (state to "pursue all cost effective energy efficiency and conservation as the state preferred energy resource."); Maine Comprehensive Energy Plan Update (Feb. 2016) (investing in energy efficiency to address above average energy costs); 5 M.R.S. § 1764-A (2015) (reducing energy consumption in Maine- owned facilities); Conn. Gen. Stat. §§ 16a-1, 16a-3d, 16a-35k (targeting energy efficiency and demand reduction) and §§ 16a-46e to 46j (targeting residential and commercial energy efficiency); Vt. Stat. Ann. tit. 30, §§ 202a, 8001(a); *see also id.* §§ 209(d), 218c (providing goals and requirements for energy efficiency and conservation programs, including development of comprehensive energy efficiency programs); ORS 469.010(1)(b) (energy conservation as Oregon Department of Energy's core mission) and ORS 276.900 - .915 (goal of 20 percent energy use reduction in all state-owned buildings by 2023); Md. Code Ann., Pub. Util. Cos. § 7-211 (annual energy savings target of at least 2.0 percent per year) and Md. Code Ann., State Gov't §§ 9-20A-01 to 9-20A-0 (low interest loan program to promote energy conservation and energy efficiency in Maryland); 1997 Mass. Acts ch. 164 (electric investor-owned utilities in the Commonwealth of Massachusetts required to implement energy efficiency programs such that percentage of annual electricity needs are met through efficiency) and 2008 Mass. Acts ch. 169 (mandating procurement of "all available energy efficiency and demand reduction resources that are cost effective or less expensive than supply"); Minn. Stat. § 216B.2401 ("it is the energy policy of the state of Minnesota to achieve annual energy savings equal to at least 1.5 percent of annual retail energy sales of electricity and natural gas through cost-effective energy conservation improvement programs and . . . appliance standards . . .").

29.    DOE's delay in reviewing and updating efficiency standards for the 25 categories

of products at issue harms plaintiffs' sovereign interests by frustrating their respective energy and climate change policy goals.

30.    Plaintiffs also have strong proprietary interests in DOE's timely improvement of energy efficiency standards. For example, many of the plaintiffs purchase and use products that are the subject of this action. These appliances and equipment are used in state- or city-owned office buildings, warehouses, maintenance shops, hospitals, and residential care or educational facilities. Plaintiffs will face increased energy costs if DOE fails to update its efficiency standards and thereby compel manufacturers to improve the energy efficiency of their product offerings over time. For states that provide low-income households with financial assistance to reduce their energy burden, the lack of updated standards results in higher state expenditures. In addition, the negative health effects of pollution resulting from increased energy production will mean increased expenditures for states that share in the cost of their residents' medical care. DOE's delay only adds to plaintiffs' economic burden of mitigating and responding to the potentially catastrophic impacts of climate change.

31.    Finally, plaintiffs rely on DOE to adopt and maintain up-to-date national energy efficiency standards because of their potential preemptive effect. States are generally preempted from enacting energy efficiency standards for products covered under EPCA that are subject to an existing standard. 42 U.S.C. § 6297. DOE's failure to update and strengthen federal efficiency standards, coupled with EPCA's preemption clause, creates a gap in energy efficiency efforts that is harmful to plaintiffs and their citizens and residents.

<u>Defendants</u>

32.    Dan Brouillette is the Secretary of DOE and is named in his official capacity. He is responsible for administration of that agency in accordance with EPCA, 42 U.S.C. §§ 6291-6317. His principal place of business is at DOE, 1000 Independence Ave., SW, Washington, DC

20585.

33.     DOE is an agency of the United States.  It is the agency responsible for implementation of EPCA, 42 U.S.C. §§ 6291-6317. DOE's headquarters are located at 1000 Independence Ave., S.W., Washington, D.C. 20585.

## FACTS COMMON TO ALL CLAIMS

The Importance of Energy Efficiency Standards

34.     Electricity generation and natural gas use in the United States cause a wide range of adverse environmental impacts, including air pollution emissions that threaten public health and contribute to global climate change. The impacts of electricity generation also include water pollution, such as toxic mercury pollution harmful to fish and aquatic ecosystems. The extraction, production and transport of natural gas and other fossil fuels for electricity generation also have major adverse environmental effects.

35.     Cost-effective, technologically feasible appliance efficiency standards reduce the demand for electricity, natural gas and other energy resources while providing consumers with the same level of service from their products. Thus, the energy conserved through efficiency standards yields substantial public health and environmental benefits.

36.     Energy efficiency standards also have important consumer economic benefits. Because efficient products use less energy, consumers enjoy significantly reduced utility bills over product lifetimes. Moreover, by reducing energy demand, efficiency standards reduce the price of energy for all consumers, particularly in competitive wholesale energy markets. For example, when electricity demand peaks upward in the summer, the cost of additional power generation needed to meet the incremental growth in demand increases dramatically. This is because electricity is then sourced from higher priced, less efficient, and often more polluting power plants that are called upon to operate during these periods of high demand. Thus, even

12

relatively small decreases in electricity peak demand can dramatically reduce the market price for, and environmental consequences of obtaining, power during peak periods.

37.     Energy efficiency standards also help consumers because they help address the "split incentive" problem often experienced by people who rent apartments and houses: landlords have an economic incentive to buy the cheapest appliances without regard to energy efficiency, but tenants pay the energy bills. As a result, absent strong energy efficiency standards, tenants can end up with unnecessarily high bills, a particularly acute problem in large urban areas such as New York City, where many residents live in multi-family rental housing units. This "split incentive" problem also can arise where developers build and sell finished homes: developers have an incentive to buy and install the least expensive fixtures and appliances without regard to their energy efficiency, while buyers shoulder the higher operational costs.

38.     Energy efficiency standards are particularly helpful to moderate and low-income consumers, who typically spend more on energy as a percentage of income than other income groups.

39.     Finally, national energy efficiency standards help consumers by making energy efficient products the norm, rather than the exception. These standards ensure that consumers will find readily available energy efficient products to meet their home appliance needs without having to pay a premium for efficient performance, as competition among manufacturers drive prices down.

40.     When implemented properly, residential and commercial energy efficiency standards are one of the most successful policies used by the federal government and states to save energy. For example, clothes washers and air conditioners manufactured today use, respectively, 70 percent and 50 percent less energy than models made in 1990 due to EPCA's

iterative process for strengthening efficiency standards. *See* DOE, Saving Energy and Money with Appliance and Equipment Standards in the United States Factsheet (Jan. 2017), *available at* https://www.energy.gov/sites/prod/files/2017/01/f34/Appliance%20and%20Equipment%20Stand ards%20Fact%20Sheet-011917_0.pdf.

41.     Energy efficiency experts from the American Council for an Energy-Efficient Economy (ACEEE) and the Appliance Standards Awareness Project (ASAP) estimate that updated standards for the 25 products here at issue could, by 2050, save consumers and businesses more than a half trillion dollars in energy costs based on the resulting reductions in national energy consumption. *See* ASAP & ACEEE, *"Next Generation Standards: How the National Energy Efficiency Standards Program Can Continue to Drive Energy, Economic, and Environmental Benefits"* at Tables 5-6 (Aug. 2016), *available at* https://appliance-standards.org/sites/default/files/Next%20Gen%20Report%20Final_1.pdf.

42.     For example, ASAP and ACEEE calculate that, by 2035, updated efficiency standards for refrigerators and freezers could on an annual basis save consumers 17.1 terawatt-hours (TWh) of electricity, reduce electric bills by up to $2.4 billion, and prevent 8.8 million metric tons (MMT) of $CO_2$ pollution. Updated clothes washer standards are estimated to save 2.6 TWh of electricity, 21.7 trillion British thermal units (TBtu) of natural gas, $2.2 billion in reduced electric bills, and 2.5 MMT in reduced $CO_2$ emissions. Similarly, updated clothes dryer standards would save 17.7 TWh of electricity, 16.3 TBtu of natural gas, $2.7 billion in reduced energy costs, and 9.9 MMT of $CO_2$ emissions. And updated residential water heater standards could save up to 55.2 TWh of electricity, 169.7 TBtu of natural gas, $10 billion in reduced utility costs, and 37.4 MMT in reduced $CO_2$ emissions. *Id.* at 11.

43.     Any long-term solution to our nation's energy needs must both improve product

affordability and reliability, and minimize emissions of pollutants such as greenhouse gases that contribute to climate change. According to the latest report of the United Nations' Intergovernmental Panel on Climate Change (IPCC), the world must significantly reduce its greenhouse gas emissions in the coming decades or risk ecological and social disaster. *See* IPCC, *The Special Report on Global Warming of 1.5 ºC* (October 2018), *available at* http://www.ipcc.ch/report/sr15/.

44.     The IPCC's Special Report, authored and edited by 91 scientists from 40 countries, synthesizes the findings of leading climate scientists and concludes that any increase in average global temperatures must be limited to no more than 1.5 degrees Celsius above pre-industrial levels – .5 degree Celsius less than previously thought necessary to avert catastrophe. The IPCC further determined that "rapid and far-reaching" changes, including decarbonization of global energy systems and the reduction of greenhouse gas emissions to nearly half of 2010 levels by 2030, will be required to meet the 1.5 degrees Celsius threshold.

45.     DOE's energy efficiency program can serve as a critical tool in our governments' efforts to address climate change. According to the "Energy Efficiency 2018" market report of the International Energy Agency (IEA) (*available at* https://www.iea.org/efficiency2018/), energy efficiency alone could account for nearly half of the $CO_2$ emissions reductions needed for global sustainable development in 2040.

<u>DOE's Statutory Obligation to Periodically Review and Update Energy Efficiency Standards</u>

46.     The provisions and legislative history of EPCA over the last forty years demonstrate Congress' consistent and growing interest in ensuring timely issuance of improved energy efficiency standards. In 1975, Congress enacted EPCA, Pub. L. No. 94-163, 89 Stat. 871 (1975), as part of a "comprehensive national energy policy." S. Rep. No. 516, 94th Congress, 1st Sess. 116 (1975) (conference report), *reprinted in* 1975 U.S.C.C.A.N. 1762, 1857. Two of

EPCA's major purposes are "to conserve energy supplies through energy conservation programs" and "to provide for improved energy efficiency of . . . major appliances and certain other consumer products." 42 U.S.C. §§ 6201(4), (5).

47.    In 1978, as part of an overhaul of national energy policy, Congress enacted the National Energy Conservation Policy Act (NECPA), Pub. L. No. 95-619, 92 Stat. 3206 (1978), which amended EPCA to require that the newly-created DOE establish energy efficiency standards for thirteen categories of major residential appliances. 92 Stat. 3206, 3259, 3264.

48.    In 1987, after several plaintiff states and others successfully sued DOE for its failure to establish meaningful appliance energy efficiency standards, *see NRDC v. Herrington*, 768 F.2d 1355 (D.C. Cir. 1985), Congress passed the National Appliance Energy Conservation Act of 1987 (NAECA), Pub. L. No. 100-12, 101 Stat. 103 (1987). NAECA amended EPCA by establishing initial energy efficiency standards for certain household appliances and imposing upon DOE specific obligations and deadlines to amend and strengthen those standards. By doing so, Congress required DOE to periodically review its standards to ensure that efficiency levels are set at the maximum level that is technologically feasible and economically justified. 42 U.S.C. § 6295(o)(2)(A).  Congress's adoption of the Energy Policy Act of 1992, Pub. L. 102-486, §§ 121-28, 106 Stat. 2776, 2805-36 (1992), broadened DOE's energy efficiency standards program to include additional products and timelines for action.

49.    In 2005, Congress enacted the Energy Policy Act of 2005 (EPACT), which directed DOE to develop a plan to expeditiously issue efficiency standards for those products for which it had not yet met the deadlines specified in EPCA. Pub. L. No. 109-58, §§ 135-36, 119 Stat. 594, 624-45 (2005). Since then, EPCA's energy efficiency provisions have undergone numerous other amendments that have expanded DOE's obligations to prescribe, review and

update energy efficiency standards for a broad range of residential and commercial products. *See* Pub. L. 110-140, §§ 301-413, 121 Stat. 1492, 1549-602 (2007); Pub. L. 111-360, 124 Stat. 4051-52 (2011); Pub. L. 112-210, 126 Stat. 1514 (2012).

50.     In its current form, EPCA authorizes DOE energy efficiency standards for over 60 categories of common consumer and commercial products and industrial equipment.

51.     One of EPCA's central features is the requirement that DOE engage in an iterative process of improving the energy efficiency of products by reviewing existing efficiency standards to determine whether more stringent standards for such products are warranted.  EPCA requires DOE to adopt amended standards if it determines that more stringent energy efficiency standards are technologically feasible, economically justified and would result in significant energy savings. 42 U.S.C. §§ 6295(m)(1); 6295(n)(2); 6295(o); 6316(a).

52.     EPCA sets forth strict timetables for DOE to periodically review and amend existing standards. *See i.e.*, 42 U.S.C. §§ 6295(m)(1), 6295(m)(3), 6295(hh)(3), 6313(a)(6)(A)(ii), 6313(a)(6)(B)(i), 6313(a)(6)(C), 6313(c)(6)(B), 6313(f)(5).

53.     For consumer products, 42 U.S.C. § 6295(m)(l), provides that, "Not later than 6 years after issuance of any final rule establishing or amending a standard, as required for a product under this part, the Secretary shall publish (A) a notice of the determination of the Secretary that standards for the product do not need to be amended, based on the criteria established under subsection (n)(2); or (B) a notice of proposed rulemaking including new proposed standards based on the criteria established under subsection (o) and the procedures established under subsection (p)."

54.     Thus, DOE is required to determine, within six years of adopting a final rule prescribing an initial or amended standard, whether such standard should be amended. *Id.* DOE

17

must either issue a determination that the existing standard does not need to be amended, 42

U.S.C. §§ 6295(m)(1)(a), or issue a notice of proposed rulemaking with proposed amended

standards, 42 U.S.C. §§ 6295(m)(1)(b). If DOE issues proposed amended standards, it must

issue a final rule adopting the amended standard within two years. 42 U.S.C. §§ 6295(m)(3)(A).

Alternatively, if DOE determines that an existing efficiency standard should not be amended,

EPCA requires that DOE revisit that determination within three years. 42 U.S.C. §§

6295(m)(3)(B).

55.     DOE's duty to periodically review and update existing standards also extends to

covered commercial products and industrial equipment. 42 U.S.C. § 6316(a). Depending on the

specific product or equipment, EPCA requires DOE to update standards based on a 6-year

review cycle similar to the procedure set forth in 42 U.S.C. § 6295(m) for consumer products

(*see* 42 U.S.C. §§ 6313(a)(6)(C), 6316(a)) or by a specified deadline (*see* 42 U.S.C. §§

6313(c)(6)(B), 6313(f)(5)).

56.     EPCA also requires DOE to update energy efficiency standards for commercial

products or equipment based on revisions to energy efficiency codes published by the American

Society of Heating, Refrigerating and Air-Conditioning Engineers, Inc. (ASHRAE), a not-for-

profit organization that develops industry standards by consensus. 42 U.S.C. § 6313(a)(6)(A).

ASHRAE's Standard 90.1 is a model energy efficiency code for commercial buildings that sets

forth energy efficiency standards for several types of heating and cooling equipment, including

the commercial product and industrial equipment categories listed in 42 U.S.C. § 6313(a). EPCA

mandates that whenever the ASHRAE 90.1 Standard is amended with respect to such equipment,

DOE must harmonize its standards with those of the amended ASHRAE 90.1 Standards by either

adopting an amended uniform national standard at least as stringent as the ASHRAE standard

within 18 months, 42 U.S.C. § 6313(a)(6)(A)(ii)(I), or adopting a uniform national standard more stringent than the amended ASHRAE standard within 30 months, 42 U.S.C. § 6313(a)(6)(B)(i).

57.     Thus, for both consumer and commercial equipment, DOE must comply with mandatory, statutory deadlines for determining whether to strengthen a standard, for proposing an amended standard, for issuing a final rule promulgating the amended standard, and for revisiting a determination that no amendment is warranted. This framework for regular, periodic review of DOE's efficiency standards ensures that new or amended efficiency standards keep pace with improvements in technology, consistent with Congressional intent that standards "achieve the maximum improvement in energy efficiency . . . which the Secretary determines is technologically feasible and economically justified." 42 U.S.C. §§ 6295(o)(2)(A); 6316(a).

58.     Finally, to safeguard efficiency gains, Congress included in EPCA an anti-backsliding provision specifying that "[t]he Secretary may not prescribe any amended standard" that "decreases the minimum required energy efficiency" of a "covered product." 42 U.S.C. §§ 6295(o)(1); 6313(a)(6)(iii)(I).

EPCA's Citizen Suit and APA Provisions

59.     EPCA's "citizen suit" provision provides that "any person may commence a civil action" in a United States district court against the Secretary of DOE "in any case in which there is an alleged failure of the Secretary to comply with a nondiscretionary duty to issue a proposed or final rule according to the schedules set forth in [42 U.S.C. § 6295] . . ." 42 U.S.C. §§ 6305(a)(3).

60.     Plaintiffs are all "persons" within the meaning of EPCA. 42 U.S.C. § 6202(2).

61.     Additionally, "any person" may commence an action against "any Federal agency . . . where there is an alleged failure of such agency to perform any act or duty under [EPCA] which is not discretionary . . ." 42 U.S.C. § 6305(a)(2).

62.     With respect to claims pursuant to 42 U.S.C. § 6305(a)(3) based on missed statutory deadlines, EPCA further provides that "courts shall advance" such claims "on the docket and expedite the disposition of" these actions.  If in such actions "the court finds that the Secretary has failed to comply with a deadline established in [42 U.S.C. § 6295], the court shall have jurisdiction to order appropriate relief, including relief that will ensure the Secretary's compliance with future deadlines for the same covered product." 42 U.S.C. § 6305(a)(3).

63.     Finally, EPCA provides that the court may award costs, including reasonable attorneys' fees, in issuing an order in a citizen suit action. 42 U.S.C. § 6305(d).

64.     EPCA provides that the citizen suit provisions set forth in the consumer appliance section of the Act are also applicable to enforce DOE's statutory duties to revise energy efficiency standards for the commercial products at issue in this litigation. 42 U.S.C. §§ 6316(a), 6316(b)(1).

65.     The APA governs agency rulemaking and judicial review of agency action and inaction. 5 U.S.C. §§ 551-706. It provides, in relevant part, that a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed . . ." 5 U.S.C. § 706(1).

DOE's Failure to Comply with EPCA's Deadlines for Reviewing and Updating Existing Efficiency Standards

66.     DOE has a long history of missing statutory deadlines for issuing, reviewing and revising energy efficiency standards. In 2005, New York and others challenged DOE's failure to issue or revise energy efficiency standards for 22 categories of products. *See New York v. Bodman*, Nos. 05-7807, 05-7808 (S.D.N.Y. 2005). DOE had missed at least one, and in many cases, multiple statutory deadlines for each product category, with some standards more than a dozen years late. That case resulted in a consent decree that set a schedule for DOE's required determinations and promulgation of standards. DOE met its obligations under the consent decree

in 2012.

67.     However, DOE is once again falling behind in complying with EPCA's deadlines. In its most recent semi-annual Energy Conservation Standards Activities Report to Congress mandated under the Energy Policy Act of 2005, DOE acknowledged missing a number of statutory deadlines, including those at issue here. *See DOE Energy Conservation Standards Activities Report to Congress* (July 2019), *available at* https://www.energy.gov/sites/prod/files/2019/07/f65/rtc-july-2019.pdf.

68.     As set forth below, DOE has failed to meet its statutory deadlines for 25 product categories and this Court should compel DOE to comply. In the absence of a declaratory judgment and permanent injunction requiring DOE to comply with its statutory obligations according to a specific, court-enforced schedule, DOE's delay in updating its appliance standards is likely to continue harming the economic, environmental, public health, recreational, consumer, and energy security interests of the plaintiffs and their citizens and residents.

## FIRST CLAIM FOR RELIEF

### (Consumer Product Standard -- Water Heaters)

69.     Water heaters are a category of covered products for which DOE has prescribed a minimum efficiency standard pursuant to EPCA. 42 U.S.C. § 6295(e).

70.     On April 16, 2010, DOE issued a final rule adopting amended energy conservation standards for water heaters. 75 Fed. Reg. 20,112 (Apr. 16, 2010).

71.     Pursuant to 42 U.S.C. § 6295(m)(1), DOE was required to review and update existing water heater standards by no later than April 16, 2016.

72.     On May 21, 2020, DOE issued a request for information to help it determine whether to amend water heater standards. 85 Fed. Reg. 30,853 (May 21, 2020).

73.     DOE has not published a notice of its determination that amendment of the

standards for water heaters is unnecessary.

74.     Nor has DOE published a notice of proposed rulemaking with proposed amended standards for water heaters.

75.     By failing to publish on or before April 16, 2016 either a final determination that the existing standard should not be amended or a proposed amended standard, DOE has violated the statutory deadline in 42 U.S.C. § 6295(m)(1) for reviewing and updating efficiency standards for water heaters.

76.     DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

77.     DOE's failure to comply with EPCA's deadline constitutes agency action "unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

78.     Plaintiffs are harmed by DOE's failure to review and update energy efficiency standards for water heaters. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

## SECOND CLAIM FOR RELIEF

### (Consumer Product Standard – Pool Heaters)

79.     Pool heaters are a category of covered products for which DOE has prescribed a minimum efficiency standard pursuant to EPCA. 42 U.S.C. § 6295(e).

80.     On April 16, 2010, DOE issued a final rule adopting amended energy conservation standards for pool heaters. 75 Fed. Reg. 20,112 (Apr. 16, 2010).

81.     On October 26, 2015, DOE issued a notice of data availability and request for comment on whether pool heater standards should be amended. 80 Fed. Reg. 65,169 (Oct. 26,

2015).

82.     Pursuant to 42 U.S.C. § 6295(m)(1), DOE was required to review and update pool heater standards by no later than April 16, 2016.

83.     DOE has not published a notice of its determination that amendment of the standards for pool heaters is unnecessary.

84.     Nor has DOE published a notice of proposed rulemaking with proposed amended standards for pool heaters.

85.     By failing to publish on or before April 16, 2016 either a final determination that the existing standard should not be amended or a proposed amended standard, DOE has violated the statutory deadline in 42 U.S.C. § 6295(m)(1) for reviewing and updating efficiency standards for pool heaters.

86.     DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

87.     DOE's failure to comply with EPCA's deadline constitutes agency action "unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

88.     Plaintiffs are harmed by DOE's failure to review and update energy efficiency standards for pool heaters. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

### THIRD CLAIM FOR RELIEF

**(Consumer Product Standard –
Non-Weatherized Furnaces and Mobile Home Gas Furnaces)**

89.     Non-weatherized furnaces and mobile home gas furnaces are categories of

covered products for which DOE has prescribed minimum efficiency standards pursuant to EPCA. 42 U.S.C. § 6295(f).

90.     On March 12, 2015, DOE issued proposed amended energy conservation standards for non-weatherized furnaces and mobile home gas furnaces. 80 Fed. Reg. 13,120 (Mar. 12, 2015).

91.     On September 23, 2016, DOE issued a supplemental notice of proposed rulemaking regarding standards for non-weatherized furnaces and mobile home gas furnaces. 81 Fed. Reg. 65,719 (Sept. 23, 2016). DOE reopened the public comment period on December 5, 2016. 81 Fed. Reg. 87,493 (Dec. 5, 2016).

92.     Pursuant to 42 U.S.C. § 6295(m)(3)(A), DOE was required to publish a final rule amending the standards for non-weatherized furnaces and mobile home gas furnaces by no later than March 12, 2017.

93.     DOE has not published a final rule amending the standards for non-weatherized furnaces and mobile home gas furnaces.

94.     By failing to publish on or before March 12, 2017 final amended standards, DOE has violated the statutory deadline in 42 U.S.C. § 6295(m)(3)(A) for updating efficiency standards for non-weatherized furnaces and mobile home gas furnaces.

95.     DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

96.     DOE's failure to comply with EPCA's deadline constitutes agency action "unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

24

97.     Plaintiffs are harmed by DOE's failure to review and update energy efficiency standards for non-weatherized furnaces and mobile home gas furnaces. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

## FOURTH CLAIM FOR RELIEF

### (Consumer Product Standard -- Clothes Dryers)

98.     Clothes dryers are a category of covered products for which DOE has prescribed a minimum efficiency standard pursuant to EPCA. 42 U.S.C. § 6295(g).

99.     On April 21, 2011, DOE issued a direct final rule adopting amended energy conservation standards for clothes dryers. 76 Fed. Reg. 22,454 (Apr. 21, 2011), confirmed, 76 Fed. Reg. 52,852 (Aug. 24, 2011).

100.     On March 27, 2015, DOE issued a request for information to help it determine whether existing clothes dryer standards should be amended. 80 Fed. Reg. 16,309 (Mar. 27, 2015).

101.     Pursuant to 42 U.S.C. § 6295(m)(1), DOE was required to review and update the clothes dryer standards by no later than April 21, 2017.

102.     DOE has not published a notice of its determination that amendment of the standards for clothes dryers is unnecessary.

103.     Nor has DOE published a notice of proposed rulemaking with proposed amended standards for clothes dryers.

104.     By failing to publish on or before April 21, 2017 either a final determination that the existing standard should not be amended or a proposed amended standard, DOE has violated the statutory deadline in 42 U.S.C. § 6295(m)(1) for reviewing and updating efficiency standards for clothes dryers.

105.     DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

106.     DOE's failure to comply with EPCA's deadline constitutes agency action "unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. §§ 706(1), (2).

107.     Plaintiffs are harmed by DOE's failure to review and update energy efficiency standards for clothes dryers. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

## FIFTH CLAIM FOR RELIEF

### (Consumer Product Standard – Room Air Conditioners)

108.     Room air conditioners are a category of covered products for which DOE has prescribed a minimum efficiency standard pursuant to EPCA. 42 U.S.C. § 6295(c).

109.     On April 21, 2011, DOE issued a direct final rule adopting amended energy conservation standards for room air conditioners. 76 Fed. Reg. 22,454, confirmed, 76 Fed. Reg. 52,852.

110.     Pursuant to 42 U.S.C. § 6295(m)(1), DOE was required to review and update room air conditioners standards by no later than April 21, 2017.

111.     On June 17, 2020, DOE published a notice of webinar on its preliminary analysis of potential standards and of the availability of its preliminary technical support document. 85 Fed. Reg. 36,512 (June 17, 2020).

112.     DOE has not published a notice of its determination that amendment of the standards for room air conditioners is unnecessary.

113.     Nor has DOE published a notice of proposed rulemaking with proposed amended

standards for room air conditioners.

114.    By failing to publish on or before April 21, 2017 either a final determination that
the existing standard should not be amended or a proposed amended standard, DOE has violated
the statutory deadline in 42 U.S.C. § 6295(m)(1) for reviewing and updating efficiency standards
for room air conditioners.

115.    DOE has failed both "to perform [an] act or duty under [EPCA] which is not
discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a
. . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

116.    DOE's failure to comply with EPCA's deadline constitutes agency action
"unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of
discretion and otherwise not in accordance with law. 5 U.S.C. §§ 706(1), (2).

117.    Plaintiffs are harmed by DOE's failure to review and update energy efficiency
standards for room air conditioners. Plaintiffs have no adequate remedy at law and only the
injunctive relief requested in this complaint will remedy their harms.

## SIXTH CLAIM FOR RELIEF

### (Consumer Product Standard – Conventional Cooking Products)

118.    Conventional cooking products are a category of covered products for which
DOE has prescribed minimum efficiency standards pursuant to EPCA. 42 U.S.C. § 6295(h).

119.    On June 10, 2015, DOE issued proposed amended energy conservation standards
for conventional cooking products. 80 Fed. Reg. 33,030 (June 15, 2015).

120.    On September 2, 2016, DOE issued a supplemental notice of proposed
rulemaking regarding conventional cooking products, 81 Fed. Reg. 60,784 (Sept. 2, 2016). DOE
extended the comment period on September 30, 2016. 81 Fed. Reg. 67,219 (Sept. 30, 2016).

121.    Pursuant to 42 U.S.C. § 6295(m)(3)(A), DOE was required to publish a final rule

adopting final conventional cooking product standards by no later than June 10, 2017.

122.    By failing to publish on or before June 10, 2017 final amended standards, DOE has violated the statutory deadline in 42 U.S.C. § 6295(m)(3)(A) for updating efficiency standards for conventional cooking products.

123.    DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

124.    DOE's failure to comply with EPCA's deadline constitutes agency action "unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

125.    Plaintiffs are harmed by DOE's failure to update energy efficiency standards for conventional cooking products. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

## SEVENTH CLAIM FOR RELIEF

### (Consumer Product Standard – Oil Furnaces and Weatherized Gas Furnaces)

126.    Oil furnaces and weatherized gas furnaces are a category of covered products for which DOE has prescribed a minimum efficiency standard pursuant to EPCA. 42 U.S.C. § 6295(f).

127.    On June 27, 2011, DOE issued a Direct Final Rule adopting amended energy conservation standards for oil furnaces and weatherized gas furnaces. 76 Fed. Reg. 37,408 (June 27, 2011).

128.    Pursuant to 42 U.S.C. § 6295(m)(1), DOE was required to review and update the standards for oil furnaces and weatherized gas furnaces by no later than June 27, 2017.

129.    DOE has not published a notice of its determination that amendment of the standards for oil furnaces and weatherized gas furnaces is unnecessary.

130.    Nor has DOE published a notice of proposed rulemaking with proposed amended standards for oil furnaces and weatherized gas furnaces.

131.    By failing to publish on or before June 27, 2017 either a final determination that the existing standard should not be amended or a proposed amended standard, DOE has violated the statutory deadline in 42 U.S.C. § 6295(m)(1) for reviewing and updating efficiency standards for oil furnaces and weatherized gas furnaces.

132.    DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

133.    DOE's failure to comply with EPCA's deadline constitutes agency action "unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

134.    Plaintiffs are harmed by DOE's failure to review and update energy efficiency standards for oil furnaces and weatherized gas furnaces. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

## EIGHTH CLAIM FOR RELIEF

### (Consumer Product Standard – Refrigerators and Freezers)

135.    Refrigerators and freezers are a category of covered products for which DOE has prescribed a minimum efficiency standard pursuant to EPCA. 42 U.S.C. § 6295(b).

136.    On September 15, 2011, DOE issued a final rule adopting amended energy conservation standards for refrigerators and freezers. 76 Fed. Reg. 57,515 (Sept. 15, 2011).

137.    Pursuant to 42 U.S.C. § 6295(m)(1), DOE was required to review and update

refrigerator and freezer standards by no later than September 15, 2017.

138.    On November 15, 2019, DOE published a request for information to help it determine whether the current refrigerator and freezer standards should be amended, 84 Fed. Reg. 62,470 (Nov. 15, 2019). DOE extended the comment period on December 13, 2019, 84 Fed. Reg. 68,060 (Dec. 13, 2019).

139.    DOE has not published a notice of its determination that amendment of the standards for refrigerators and freezers is unnecessary.

140.    Nor has DOE published a notice of proposed rulemaking with proposed amended standards for refrigerators and freezers.

141.    By failing to publish on or before September 15, 2017 either a final determination that the existing standard should not be amended or a proposed amended standard, DOE has violated the statutory deadline in 42 U.S.C. § 6295(m)(1) for reviewing and updating efficiency standards for refrigerators and freezers

142.    DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

143.    DOE's failure to comply with EPCA's deadline constitutes agency action "unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

144.    Plaintiffs are harmed by DOE's failure to review and update energy efficiency standards for refrigerators and freezers. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

## NINTH CLAIM FOR RELIEF

### (Consumer Product Standards – Fluorescent Lamp Ballasts)

145.     Fluorescent lamp ballasts are a category of covered products for which DOE has prescribed a minimum efficiency standard pursuant to EPCA. 42 U.S.C. § 6295(g).

146.     On November 14, 2011, DOE issued a final rule adopting amended energy conservation standards for fluorescent lamp ballasts. 76 Fed. Reg. 70,548 (Nov. 14, 2011).

147.     Pursuant to 42 U.S.C. § 6295(m)(1), DOE was required to review and update fluorescent lamp ballast standards by no later than November 14, 2017.

148.     On October 22, 2019, DOE published notice of its proposed determination that current standards for fluorescent lamp ballasts do not need to be amended, 84 Fed. Reg. 56,540 (Oct. 22, 2019).

149.     DOE has not published a notice of its final determination that amendment of the standards for fluorescent lamp ballasts is unnecessary.

150.     By failing to publish on or before November 14, 2017 either a final determination that the existing standard should not be amended or a proposed amended standard, DOE has violated the statutory deadline in 42 U.S.C. § 6295(m)(1) for reviewing and updating efficiency standards for fluorescent lamp ballasts.

151.     DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

152.     DOE's failure to comply with EPCA's deadline constitutes agency action "unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

153.     Plaintiffs are harmed by DOE's failure to review and update energy efficiency

31

standards for fluorescent lamp ballasts. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

### TENTH CLAIM FOR RELIEF

**(Consumer Product Standard – Clothes Washers)**

154.    Clothes washers are a category of covered products for which DOE has prescribed a minimum efficiency standard pursuant to EPCA.  42 U.S.C. § 6295(g).

155.    On May 31, 2012, DOE issued a direct final rule adopting amended energy conservation standards for clothes washers. 77 Fed. Reg. 32,308 (May 31, 2012); confirmed, 77 Fed. Reg. 59,719 (Oct. 1, 2012).

156.    Pursuant to 42 U.S.C. § 6295(m)(1), DOE was required to review and update existing clothes washer standards by no later than May 31, 2018.

157.    On August 2, 2019, DOE issued a request for information to help it determine whether the clothes washer standards should be amended. 84 Fed. Reg. 37,794 (Aug. 2, 2019). On August 26, 2019, DOE extended the comment period. 84 Fed. Reg. 44,557 (Aug. 26, 2019). The comment period was reopened on October 3, 2019. 84 Fed. Reg. 52,818 (Oct. 3, 2019).

158.    DOE has not published a notice of its determination that amendment of the standards for clothes washers is unnecessary.

159.    Nor has DOE published a notice of proposed rulemaking with proposed amended standards for clothes washers.

160.    By failing to publish on or before May 31, 2018 either a final determination that the existing standard should not be amended or a proposed amended standard, DOE has violated the statutory deadline in 42 U.S.C. § 6295(m)(1) for reviewing and updating efficiency standards for clothes washers.

161.    DOE has failed both "to perform [an] act or duty under [EPCA] which is not

discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a

. . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

162.    DOE's failure to comply with EPCA's deadline constitutes agency action

"unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of

discretion and otherwise not in accordance with law. 5 U.S.C. §§ 706(1), (2).

163.    Plaintiffs are harmed by DOE's failure to review and update energy efficiency

standards for clothes washers. Plaintiffs have no adequate remedy at law and only the injunctive

relief requested in this complaint will remedy their harms.

## ELEVENTH CLAIM FOR RELIEF

### (Consumer Product Standard – Microwave Ovens)

164.    Microwave ovens are a category of covered products for which DOE has

prescribed a minimum efficiency standard pursuant to EPCA. 42 U.S.C. § 6295(h).

165.    On June 17, 2013, DOE issued a final rule adopting amended energy conservation

standards for microwave ovens. 78 Fed. Reg. 36,316 (Jun. 17, 2013).

166.    On August 13, 2019, DOE issued a request for information to help it determine

whether standards for microwave ovens should be amended. 84 Fed. Reg. 39,980 (Aug. 13,

2019).

167.    Pursuant to 42 U.S.C. § 6295(m)(1), DOE was required to review and update

microwave oven standards by no later than June 17, 2019.

168.    DOE has not published a notice of its determination that amendment of the

standards for microwave ovens is unnecessary.

169.    Nor has DOE published a notice of proposed rulemaking with proposed amended

standards for microwave ovens.

170.    By failing to publish on or before June 17, 2019 either a final determination that

the existing standard should not be amended or a proposed amended standard, DOE has violated the statutory deadline in 42 U.S.C. § 6295(m)(1) for reviewing and updating efficiency standards for microwave ovens.

171.    DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

172.    DOE's failure to comply with EPCA's deadline constitutes agency action "unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

173.    Plaintiffs are harmed by DOE's failure to review and update energy efficiency standards for microwave ovens. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

### TWELFTH CLAIM FOR RELIEF

**(Consumer Product Standard – Direct Heating Equipment)**

174.    Direct heating equipment is a category of covered products for which DOE has prescribed a minimum efficiency standard pursuant to EPCA. 42 U.S.C. § 6295(e).

175.    On October 17, 2016, DOE issued a determination not to amend energy conservation standards for direct heating equipment. 81 Fed. Reg. 71,325 (Oct. 17, 2016).

176.    On February 26, 2019, DOE issued a request for information to help it determine whether direct heating equipment standards should be amended. 84 Fed. Reg. 6095 (Feb. 26, 2019).

177.    Pursuant to 42 U.S.C. § 6295(m)(3)(B), DOE was required to make a new determination, by no later than October 17, 2019, regarding whether direct heating equipment standards should be amended.

178. DOE has not published a notice of its determination that amendment of the standards for direct heating equipment is unnecessary.

179. Nor has DOE published a notice of proposed rulemaking with proposed amended standards for direct heating equipment.

180. By failing to publish on or before October 17, 2019 either a final determination that the existing standard should not be amended or a proposed amended standard, DOE has violated the statutory deadline in 42 U.S.C. § 6295(m)(3)(B) for reviewing and updating efficiency standards for direct heating equipment.

181. DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

182. DOE's failure to comply with EPCA's deadline constitutes agency action "unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

183. Plaintiffs are harmed by DOE's failure to review and update energy efficiency standards for direct heating equipment. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

## THIRTEENTH CLAIM FOR RELIEF

### (Consumer Product Standard – Dishwashers)

184. Dishwashers are a category of covered products for which DOE has prescribed a minimum efficiency standard pursuant to EPCA. 42 U.S.C. § 6295(g).

185. On December 13, 2016, DOE issued a determination not to amend energy conservation standards for dishwashers. 81 Fed. Reg. 90,072 (Dec. 13, 2016).

186. Pursuant to 42 U.S.C. § 6295(m)(3)(B), DOE was required to make a new

determination, by no later than December 13, 2019, regarding whether dishwasher standards should be amended.

187.    On October 14, 2020, DOE published a request for information to help it determine whether the standard for dishwashers should be amended. 85 Fed. Reg. 64981 (Oct. 14, 2020).

188.    DOE has not published a notice of its determination that amendment of the standards for dishwashers is unnecessary.

189.    Nor has DOE published a notice of proposed rulemaking with proposed amended standards for dishwashers.

190.    By failing to publish on or before December 13, 2019 either a final determination that the existing standard should not be amended or a proposed amended standard, DOE has violated the statutory deadline in 42 U.S.C. § 6295(m)(3)(B) for reviewing and updating efficiency standards for dishwashers.

191.    DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

192.    DOE's failure to comply with EPCA's deadline constitutes agency action "unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

193.    Plaintiffs are harmed by DOE's failure to review and update energy efficiency standards for dishwashers. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

## FOURTEENTH CLAIM FOR RELIEF

### (Consumer Product Standard – Metal Halide Lamp Fixtures)

194.    Metal halide lamp fixtures are a category of covered products for which DOE has prescribed a minimum efficiency standard pursuant to EPCA. 42 U.S.C. § 6295(hh), (2).

195.    On February 10, 2014, DOE issued a final rule adopting amended energy conservation standards for metal halide lamp fixtures. 79 Fed. Reg. 7746 (Feb. 10, 2014).

196.    On July 1, 2019, DOE published a request for information to help it determine whether the standard for metal halide lamp fixtures should be amended. 84 Fed. Reg. 31,232 (July 1, 2019).

197.    On August 5, 2020, DOE issued a notice of proposed determination that standards for metal halide lamp fixtures do not need to be amended. 85 Fed. Reg. 47,472 (Aug. 5, 2020).

198.    Pursuant to 42 U.S.C. § 6295(hh)(3), DOE was required to review and update metal halide lamp fixture standards by no later than January 1, 2019.

199.    DOE has not published a notice of its final determination that amendment of the standards for metal halide lamp fixtures is unnecessary.

200.    By failing to publish on or before January 1, 2019 either a final determination that the existing standard should not be amended or a proposed amended standard, DOE has violated the statutory deadline in 42 U.S.C. § 6295(hh)(3) for reviewing and updating efficiency standards for metal halide lamp fixtures.

201.    DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

202.    DOE's failure to comply with EPCA's deadline constitutes agency action "unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of

discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

203.    Plaintiffs are harmed by DOE's failure to review and update energy efficiency standards for metal halide lamp fixtures. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

## FIFTEENTH CLAIM FOR RELIEF

### (Consumer Product Standard – Furnace Fans)

204.    Furnace fans are a category of covered products for which DOE has prescribed a minimum efficiency standard pursuant to EPCA. 42 U.S.C. § 6295(f)(4)(D).

205.    On July 3, 2014, DOE issued a final rule adopting amended energy conservation standards for furnace fans. 79 Fed. Reg. 38,130 (Jul. 3, 2014).

206.    Pursuant to 42 U.S.C. § 6295(m)(1), DOE was required to review and update furnace fans standards by no later than July 3, 2020.

207.    DOE has not published a notice of its determination that amendment of the standards for furnace fans is unnecessary.

208.    Nor has DOE published a notice of proposed rulemaking with proposed amended standards for furnace fans.

209.    By failing to publish on or before July 3, 2020 either a final determination that the existing standard should not be amended or a proposed amended standard, DOE has violated the statutory deadline in 42 U.S.C. § 6295(m)(1) for reviewing and updating efficiency standards for furnace fans.

210.    DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," *id*. § 6305(a)(3).

211.    DOE's failure to comply with EPCA's deadline constitutes agency action

"unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

212.   Plaintiffs are harmed by DOE's failure to review and update energy efficiency standards for furnace fans. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

## SIXTEENTH CLAIM FOR RELIEF

**(Commercial or Industrial Equipment Standard – Small Electric Motors)**

213.   Small electric motors are a category of covered commercial equipment for which DOE has prescribed a minimum efficiency standard pursuant to EPCA. 42 U.S.C. § 6317(b).

214.   On March 9, 2010, DOE issued a final rule adopting amended energy conservation standards for small electric motors. 75 Fed. Reg. 10,874 (Mar. 9, 2010).

215.   On April 30, 2020 DOE issued a notice of proposed determination that standards for small electric motors do not need to be amended. 85 Fed. Reg. 24,146 (Apr. 30, 2020).

216.   Pursuant to 42 U.S.C. §§ 6316(a), 6295(m), DOE was required to review and update the small electric motor standards by no later than March 9, 2016.

217.   DOE has not published a notice of its final determination that amendment of the standards for small electric motors is unnecessary.

218.   By failing to publish on or before March 9, 2016 either a final determination that the existing standard should not be amended or a proposed amended standard, DOE has violated the statutory deadline in 42 U.S.C. §§ 6316(a), 6295(m) for reviewing and updating efficiency standards for small electric motors.

219.   DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

220.    DOE's failure to comply with EPCA's deadline constitutes agency action "unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

221.    Plaintiffs are harmed by DOE's failure to review and update energy efficiency standards for small electric motors. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

## SEVENTEENTH CLAIM FOR RELIEF

### (Commercial or Industrial Equipment Standard – Water and Evaporatively Cooled Commercial Air Conditioners)

222.    Water and evaporatively cooled commercial air conditioners are a category of covered commercial equipment for which DOE has prescribed a minimum efficiency standard pursuant to EPCA. 42 U.S.C. § 6313(a).

223.    On May 16, 2012, DOE issued a final rule adopting amended energy conservation standards for water and evaporatively cooled commercial air conditioners. 77 Fed. Reg. 28,928 (May 16, 2012).

224.    On July 29, 2019 DOE issued a request for information to help it determine whether the water and evaporatively cooled commercial air conditioners standards should be amended. 84 Fed. Reg. 36,480 (July 29, 2019).

225.    On September 15, 2020, DOE issued a notice of its proposed determination that standards for water and evaporatively cooled commercial air conditioners do not need to be amended. 85 Fed. Reg. 57149 (Sept. 15, 2020).

226.    Pursuant to 42 U.S.C. § 6313(a)(6)(C), DOE was required to review and update the water and evaporatively cooled commercial air conditioners standards by no later than May 16, 2018.

227.    DOE has not published a notice of its final determination that amendment of the standards for water and evaporatively cooled commercial air conditioners is unnecessary.

228.    By failing to publish on or before May 16, 2018 either a final determination that the existing standard should not be amended or a proposed amended standard, DOE has violated the statutory deadline in 42 U.S.C. § 6313(a)(6)(C) for reviewing and updating efficiency standards for water and evaporatively cooled commercial air conditioners.

229.    DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

230.    DOE's failure to comply with EPCA's deadline constitutes agency action "unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

231.    Plaintiffs are harmed by DOE's failure to review and update energy efficiency standards for water and evaporatively cooled commercial air conditioners. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

**EIGHTEENTH CLAIM FOR RELIEF**

**(Commercial or Industrial Equipment Standard –
Commercial Water Heating Equipment)**

232.    Commercial water heating equipment is a category of covered commercial equipment for which DOE has prescribed a minimum efficiency standard pursuant to EPCA. 42 U.S.C. § 6313(a).

233.    On May 31, 2016, DOE issued a notice of a proposed amended energy conservation standards for commercial water heating equipment. 81 Fed. Reg. 34,440 (May 31,

2016).

234.    On December 23, 2016, DOE issued a notice of data availability and request for

public comment regarding whether the commercial water heating equipment standards should be

amended. 81 Fed. Reg. 94,234 (Dec. 23, 2016).

235.    Pursuant to 42 U.S.C. § 6313(a)(6)(C)(iii), DOE was required to publish a final

rule adopting final amended standards for commercial water heating equipment by no later than

May 31, 2018.

236.    DOE has not published a final rule adopting final amended standards for

commercial water heating equipment.

237.    Nor has DOE published a notice of proposed rulemaking with proposed amended

standards for commercial water heating equipment.

238.    By failing to publish on or before May 31, 2018 either a final determination that

the existing standard should not be amended or a proposed amended standard, DOE has violated

the statutory deadline in 42 U.S.C. § 6313(a)(6)(C)(iii) for reviewing and updating efficiency

standards for commercial water heating equipment.

239.    DOE has failed both "to perform [an] act or duty under [EPCA] which is not

discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a

. . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

240.    DOE's failure to comply with EPCA's deadline constitutes agency action

"unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of

discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

241.    Plaintiffs are harmed by DOE's failure to review and update energy efficiency

standards for commercial water heating equipment. Plaintiffs have no adequate remedy at law

and only the injunctive relief requested in this complaint will remedy their harms.

## NINETEENTH CLAIM FOR RELIEF

### (Commercial or Industrial Equipment Standard – Distribution Transformers)

242.   Distribution transformers are a category of covered commercial equipment for which DOE has prescribed a minimum efficiency standard pursuant to EPCA. 42 U.S.C. § 6317(a).

243.   On April 18, 2013, DOE issued a final rule adopting amended energy conservation standards for distribution transformers. 78 Fed. Reg. 23,335 (Apr. 18, 2013).

244.   On June 18, 2019 DOE issued a request for information regarding whether the distribution transformers standards should be amended. 84 Fed. Reg. 28,239 (June 18, 2019).

245.   Pursuant to 42 U.S.C. §§ 6316(a), 6295(m), DOE was required to review and update the distribution transformers standards by no later than April 18, 2019.

246.   DOE has not published a notice of its determination that amendment of the standards for distribution transformers is unnecessary.

247.   Nor has DOE published a notice of proposed rulemaking with proposed amended standards for distribution transformers.

248.   By failing to publish on or before April 18, 2019 either a final determination that the existing standard should not be amended or a proposed amended standard, DOE has violated the statutory deadline in 42 U.S.C. § 6316(a) for reviewing and updating efficiency standards for distribution transformers.

249.   DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

250.   DOE's failure to comply with EPCA's deadline constitutes agency action

"unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

251.    Plaintiffs are harmed by DOE's failure to review and update energy efficiency standards for distribution transformers. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

### TWENTIETH CLAIM FOR RELIEF

**(Commercial or Industrial Equipment Standard –
Walk-In Coolers and Walk-In Freezers)**

252.    Walk-in coolers and walk-in freezers are a category of covered commercial equipment for which DOE has prescribed a minimum efficiency standard pursuant to EPCA. 42 U.S.C. § 6313(f).

253.    On July 10, 2017, DOE issued a final rule adopting amended energy conservation standards for walk-in coolers and walk-in freezers. 82 Fed. Reg. 31,808 (July 10, 2017).

254.    Pursuant to 42 U.S.C. § 6313(f)(5), DOE was required to publish, by no later than January 1, 2020, a final rule to determine whether the standards for walk-in coolers and walk-in freezers should be amended.

255.    DOE has not published a final rule determining whether to amend the standards for walk-in coolers and walk-in freezers.

256.    Nor has DOE published a notice of proposed rulemaking with proposed amended standards for walk-in coolers and walk-in freezers.

257.    By failing to publish on or before January 1, 2020 either a final determination that the existing standard should not be amended or a proposed amended standard, DOE has violated the statutory deadline in 42 U.S.C. § 6313(f)(5) for reviewing and updating efficiency standards for walk-in coolers and walk-in freezers.

44

258.     DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

259.     DOE's failure to comply with EPCA's deadline constitutes agency action "unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

260.     Plaintiffs are harmed by DOE's failure to review and update energy efficiency standards for walk-in coolers and walk-in freezers. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

## TWENTY-FIRST CLAIM FOR RELIEF

**(Commercial or Industrial Equipment Standard –
Commercial Refrigerators, Freezers, and Refrigerator-Freezers)**

261.     Commercial refrigerators, freezers, and refrigerator-freezers are a category of covered commercial equipment for which DOE has prescribed a minimum efficiency standard pursuant to EPCA. 42 U.S.C. § 6313(c).

262.     On March 28, 2014, DOE issued a final rule adopting amended energy conservation standards for commercial refrigerators, freezers, and refrigerator-freezers. 79 Fed. Reg. 17,725 (Mar. 28, 2014). The effective date of the amended standards was March 27, 2017.

263.     Pursuant to 42 U.S.C. § 6313(c)(6)(B), DOE was required to issue, within three years of the amended commercial refrigerated equipment standards' effective date, a final rule determining whether those standards should be further amended.

264.     DOE was required to publish, by no later than March 27, 2020, a final rule to determine whether the standards for commercial refrigerators, freezers, and refrigerator-freezers should be amended.

45

265.     DOE has not published a final rule determining whether to amend the standards for commercial refrigerators, freezers, and refrigerator-freezers.

266.     Nor has DOE published a notice of proposed rulemaking with proposed amended standards for commercial refrigerators, freezers, and refrigerator-freezers.

267.     By failing to publish on or before March 27, 2020 a final determination that the existing standards should not be amended, DOE has violated the statutory deadline in 42 U.S.C. § 6313(c)(6)(B) for reviewing and updating efficiency standards for commercial refrigerators, freezers, and refrigerator-freezers.

268.     DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

269.     DOE's failure to comply with EPCA's deadline constitutes agency action "unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

270.     Plaintiffs are harmed by DOE's failure to review and update energy efficiency standards for commercial refrigerators, freezers, and refrigerator-freezers. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

## TWENTY-SECOND CLAIM FOR RELIEF

### (Commercial or Industrial Equipment Standard – Electric Motors)

271.     Electric motors are a category of covered commercial equipment for which DOE has prescribed a minimum efficiency standard pursuant to EPCA. 42 U.S.C. § 6313(b).

272.     On May 29, 2014, DOE issued a final rule adopting amended energy conservation standards for electric motors. 79 Fed. Reg. 30,934 (May 29, 2014).

273. On May 21, 2020 issued a request for information to help it determine whether electric motors standards should be amended. 85 Fed. Reg. 30,878 (May 21, 2020).

274. Pursuant to 42 U.S.C. §§ 6316(a), 6295(m), DOE was required to review and update the electric motor standards by no later than May 29, 2020.

275. DOE has not published a notice of its determination that amendment of the standards for electric motors is unnecessary.

276. Nor has DOE published a notice of proposed rulemaking with proposed amended standards for electric motors.

277. By failing to publish on or before May 29, 2020 either a final determination that the existing standard should not be amended or a proposed amended standard, DOE has violated the statutory deadline in 42 U.S.C. § 6316(a) for reviewing and updating efficiency standards for electric motors.

278. DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

279. DOE's failure to comply with EPCA's deadline constitutes agency action "unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

280. Plaintiffs are harmed by DOE's failure to review and update energy efficiency standards for electric motors. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

## TWENTY-THIRD CLAIM FOR RELIEF

### (Commercial or Industrial Equipment Standard – ASHRAE Standard Amendment -- Dedicated Outdoor Air Systems)

281.    EPCA established initial statutory energy efficiency standards for commercial package air conditioning manufactured on or after January 1, 1994. 42 U.S.C. § 6313(a).

282.    On October 26, 2016, ASHRAE amended ASHRAE Standard 90.1, to establish standards for a new category of commercial package air conditioning and heating equipment known as dedicated outdoor air systems.

283.    On September 11, 2019, DOE issued a notice of data availability and request for information regarding the development of new standards for dedicated outdoor air systems. 84 Fed. Reg. 48,006. (Sept. 11, 2019).

284.    The 2016 ASHRAE amendment triggered DOE's statutory obligation under 42 U.S.C. §§ 6313(a)(6)(A)(ii)(I) and 6313(a)(6)(B)(i) either to adopt, by April 26, 2018, the amended ASHRAE standards as uniform national standards or to issue by April 26, 2019 more stringent standards for dedicated outdoor air systems.

285.    DOE has not adopted the amended ASHRAE standards as uniform national standards for dedicated outdoor air systems.

286.    Nor has it adopted standards that are more stringent than the amended ASHRAE standards for dedicated outdoor air systems.

287.    DOE has failed to meet the statutory requirement to adopt new efficiency standards for dedicated outdoor air systems based on amended ASHRAE standards, as required by 42 U.S.C. §§ 6313(a)(6)(A)(ii)(I) and § 6313(a)(6)(B)(i).

288.    By failing to either adopt the amended ASHRAE standards as uniform national standards by April 26, 2018 or issue more stringent standards by April 26, 2019, DOE has

violated the statutory deadline in 42 U.S.C. § 6313(a)(6)(A)(ii)(I) and § 6313(a)(6)(B)(i) for updating efficiency standards for dedicated outdoor air systems.

289.    DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

290.    DOE's failure to comply with EPCA's deadline constitutes agency action "unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

291.    Plaintiffs are harmed by DOE's failure to adopt new energy efficiency standards for dedicated outdoor air systems. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

## TWENTY-FOURTH CLAIM FOR RELIEF

### (Commercial or Industrial Equipment Standard – ASHRAE Amendment – Computer Room Air Conditioners)

292.    EPCA established initial statutory energy efficiency standards for commercial package air conditioning manufactured on or after January 1, 1994. 42 U.S.C. § 6313(a).

293.    Pursuant to EPCA, 42 U.S.C. § 6313(a)(6)(A), and in response to updates to ASHRAE Standard 90.1, DOE established a new category of commercial package air conditioning and heating equipment known as computer room air conditioners. DOE's current energy conservation standards for thirty equipment classes of computer room air conditioners are codified at 10 C.F.R. 431.97.

294.    On May 16, 2012, DOE issued a final rule amending the efficiency standards for computer room air conditioners. 77 Fed. Reg. 28,928 (May 16, 2012).

295.    On October 26, 2016, ASHRAE amended ASHRAE Standard 90.1, adopting

standards for computer room air conditioners that are more stringent than the current standards applicable to computer room air conditioners.  *See* 84 Fed. Reg. 48,006 (Sept. 11, 2019).

296.    On September 11, 2019, DOE issued a notice of data availability and request for information regarding whether the national standards for computer room air conditioners should be amended. 84 Fed. Reg. 48,006.

297.    On October 24, 2019, ASHRAE issued amended Standard 90.1-2019 which further revised the efficiency standards for certain commercial equipment, including certain classes of computer room air conditioners. *See* 85 Fed. Reg. 60,642 (Sept. 25, 2020).

298.    On September 25, 2020, DOE issued a second notice of data availability and request for information to help it determine whether the national standards for computer room air conditioners should be amended. 85 Fed. Reg. 60,642.

299.    The 2016 ASHRAE amendment triggered DOE's statutory obligation under 42 U.S.C. § 6313(a)(6)(A)(ii)(I) and § 6313(a)(6)(B)(i) either to adopt the amended ASHRAE standards as uniform national standards or to issue more stringent standards for computer room air conditioners.

300.    DOE has not adopted the amended ASHRAE standards as uniform national standards for computer room air conditioners.

301.    Nor has it adopted standards that are more stringent than the amended ASHRAE standards for computer room air conditioners.

302.    DOE has failed to meet the statutory requirement to adopt new efficiency standards for computer room air conditioners based on amended ASHRAE standards, as required by 42 U.S.C. § 6313(a)(6)(A)(ii)(I) and § 6313(a)(6)(B)(i).

303.    By failing to either adopt the amended ASHRAE standards as uniform national

standards by April 26, 2018 or issue more stringent standards by April 26, 2019, DOE has violated the statutory deadline in 42 U.S.C. § 6313(a)(6)(A)(ii)(I) and § 6313(a)(6)(B) for updating efficiency standards for computer room air conditioners.

304.    Additionally, for computer room air conditioning equipment classes that DOE determines were not subjected to more stringent standards by ASHRAE 90.1-2016, DOE is required to perform a 6-year look-back analysis. 42 U.S.C. § 6313(a)(6)(C). Because computer room air conditioner standards were last updated on May 16, 2012, the deadline for completing a review of the standards for these categories was May 16, 2018. *See* 77 Fed. Reg. 28,928 (May 16, 2012); 84 Fed. Reg. 48,011.

305.    DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

306.    DOE's failure to comply with EPCA's deadline constitutes agency action "unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

307.    Plaintiffs are harmed by DOE's failure to review and update energy efficiency standards for computer room air conditioners. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

## TWENTY-FIFTH CLAIM FOR RELIEF

### (Commercial or Industrial Equipment Standard – ASHRAE Amendment – Variable Refrigerant Flow Air Conditioners and Heat Pumps)

308.    EPCA established initial statutory energy efficiency standards for commercial package air conditioning manufactured on or after January 1, 1994. 42 U.S.C. § 6313(a).

309.    Pursuant to EPCA, 42 U.S.C. 6313(a)(6)(A), and in response to updates to

ASHRAE Standard 90.1, DOE established a new category of commercial package air

conditioning and heating equipment known as variable refrigerant flow air conditioners and heat

pumps. 77 Fed. Reg. 28, 928 (May 16, 2012).

310.    On October 26, 2016, ASHRAE amended ASHRAE Standard 90.1, adopting

standards for variable refrigerant flow air conditioners and heat pumps that are more stringent

than the current standards applicable to such equipment. *See* 84 Fed. Reg. 32,328, 32,332 (July 8,

2019).

311.    On July 8, 2019, DOE issued a notice of data availability and request for

information to help it determine whether the national efficiency standards for variable refrigerant

flow air conditioners and heat pumps should be amended. 84 Fed. Reg. 32,328.

312.    The 2016 ASHRAE amendment triggered DOE's statutory obligation under 42

U.S.C. § 6313(a)(6)(A)(ii)(I) and § 6313(a)(6)(B)(i) either to adopt the amended ASHRAE

standards as uniform national standards or to issue more stringent standards for variable

refrigerant flow air conditioners and heat pumps.

313.    DOE has not adopted the amended ASHRAE standards as uniform national

standards for variable refrigerant flow air conditioners and heat pumps.

314.    Nor has it adopted standards that are more stringent than the amended ASHRAE

standards for variable refrigerant flow air conditioners and heat pumps.

315.    DOE has failed to meet the statutory requirement to adopt new efficiency

standards for variable refrigerant flow air conditioners and heat pumps based on amended

ASHRAE standards, as required by 42 U.S.C. § 6313(a)(6)(A)(ii)(I) and § 6313(a)(6)(B)(i).

316.    By failing to either adopt the amended ASHRAE standards as uniform national

standards by April 26, 2018 or issue more stringent standards by April 26, 2019, DOE has

violated the statutory deadline in 42 U.S.C. § 6313(a)(6)(A)(ii)(I) and § 6313(a)(6)(B)(i) for updating efficiency standards for variable refrigerant flow air conditioners and heat pumps.

317.   DOE has failed both "to perform [an] act or duty under [EPCA] which is not discretionary," 42 U.S.C. § 6305(a)(2), and "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in [42 U.S.C. § 6295]," 42 U.S.C. § 6305(a)(3).

318.   DOE's failure to comply with EPCA's deadline constitutes agency action "unlawfully withheld" and "unreasonably delayed," and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. 5 U.S.C. § 706(1), (2).

319.   Plaintiffs are harmed by DOE's failure to review and update energy efficiency standards for variable refrigerant flow air conditioners and heat pumps. Plaintiffs have no adequate remedy at law and only the injunctive relief requested in this complaint will remedy their harms.

## PRAYER FOR RELIEF

Wherefore, plaintiffs request that this Court:

1.   Enter a declaratory judgment pursuant to 28 U.S.C. § 2201(a) finding that DOE has violated EPCA's deadlines and other requirements with respect to the review and amendment of energy efficiency standards for consumer products and commercial or industrial equipment pursuant to 42 U.S.C. §§ 6295(m)(1), 6295(m)(3), 6295(hh)(3), 6313(a)(6)(A)(ii)(I), 6313(a)(6)(B)(i), 6313(a)(6)(C), 6313(c)(6)(B), 6313(f)(5), and 6316(a), as described above;

2.   Enter a permanent injunction, pursuant to 28 U.S.C. § 2202 and 42 U.S.C §§ 6305(a)(2), 6305(a)(3), compelling DOE to review and amend the applicable standards pursuant to EPCA according to a Court-ordered schedule of compliance to be determined after briefing by the parties on appropriate timetables;

3.   Retain continuing jurisdiction over this action to monitor and ensure compliance

with its schedule of compliance;

      4.     Award plaintiffs their costs of litigation, including but not limited to reasonable attorney fees, pursuant to 42 U.S.C. § 6305(d); and

      5.     Granted such other and further relief that this Court deems just and proper.


Dated: November 9, 2020

                                FOR THE STATE OF NEW YORK

                                LETITIA JAMES
                                Attorney General

                                /s/ Lisa S. Kwong
                                LISA S. KWONG (LK3183)
                                TIMOTHY HOFFMAN (TH1955)
                                Assistant Attorneys General
                                New York State Department of Law
                                The Capitol
                                Albany, New York 12224
                                Tel: 518-776-2422
                                Email: Lisa.Kwong@ag.ny.gov
                                Email: Timothy.Hoffman@ag.ny.gov

FOR THE STATE OF CALIFORNIA

XAVIER BECERRA
Attorney General
DAVID ZONANA
Supervising Deputy Attorney General


/s/ Somerset Perry
SOMERSET PERRY
JAMIE JEFFERSON
ANTHONY AUSTIN
Deputy Attorneys General
Office of the Attorney General
1515 Clay Street, 20th Floor
Oakland, CA  94612
Tel: (510) 879-0852
Email: Somerset.Perry@doj.ca.gov
Email: Jamie.Jefferson@doj.ca.gov
Email: Anthony.Austin@doj.ca.gov


FOR THE STATE OF COLORADO

PHILIP J. WEISER
Attorney General


/s/ Eric R. Olson
ERIC R. OLSON
Solicitor General
Office of the Attorney General
1300 Broadway, 7th Floor
Denver, CO 80203
Tel: (720) 508-6562
Email: eric.olson@coag.gov

FOR THE STATE OF CONNECTICUT

WILLIAM TONG
Attorney General


/s/ Robert Snook
ROBERT SNOOK
MATTHEW I. LEVINE
Assistant Attorneys General
State of Connecticut
Office of the Attorney General
P.O. Box 120, 55 Elm Street
Hartford, CT  0614-0120
Tel: (860) 808-5250
Email: Robert.Snook@ct.gov


FOR THE DISTRICT OF COLUMBIA

KARL A. RACINE
Attorney General


/s/ Brian Caldwell
BRIAN CALDWELL
Assistant Attorney General
Social Justice Section
Office of the Attorney General
for the District of Columbia
400 6th Street, N.W., 10th Floor
Washington, DC  20001
Tel: (202) 445-1952 (mobile)
Email: brian.caldwell@dc.gov

FOR THE STATE OF ILLINOIS

KWAME RAOUL
Attorney General


/s/ Jason E. James
JASON E. JAMES*
Assistant Attorney General
MATTHEW J. DUNN
Chief, Environmental Enforcement/
Asbestos Litigation Div.
Office of the Attorney General
Environmental Bureau
69 W. Washington St., 18th Floor
Chicago, IL  60602
Tel: (312) 814-0660
Email: jjames@atg.state.il.us
*admission *pro hac vice* pending


FOR THE STATE OF MARYLAND

BRIAN E. FROSH
Attorney General


/s/ Steven J. Goldstein
STEVEN J. GOLDSTEIN
Special Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD  21202
Tel: (410) 576-6414
Email: sgoldstein@oag.state.md.us


FOR THE STATE OF MAINE

AARON M. FREY
Attorney General of Maine


/s/ Jonathan R. Bolton
JONATHAN R. BOLTON
Assistant Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, ME  04333
Tel: (207) 626-8800
Email: jonathan.bolton@maine.gov


FOR THE COMMONWEALTH OF
MASSACHUSETTS

MAURA HEALEY
Attorney General


/s/ I. Andrew Goldberg
I. ANDREW GOLDBERG
Assistant Attorney General
Environmental Protection Division
ASHLEY GAGNON
Assistant Attorney General
Energy and Telecommunications Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Tel: (617) 963-2429
Email: andy.goldberg@mass.gov

FOR THE PEOPLE OF THE STATE OF
MICHIGAN

DANA NESSEL
Attorney General

/s/ Elizabeth R. Husa Briggs
ELIZABETH R. HUSA BRIGGS
Assistant Attorney General
Health, Education & Family Services
Division
Michigan Department of Attorney General
P.O. Box 30758
Lansing, MI  48909
Tel: (517) 335-7603
Fax: (517) 335-1152

FOR THE STATE OF MINNESOTA

KEITH ELLISON
Attorney General

/s/ Leigh Currie
LEIGH CURRIE*
Special Assistant Attorney General
Minnesota Attorney General's Office
445 Minnesota Street, Suite 900
St. Paul, MN  55101
Tel: (651) 757-1291
Email: leigh.currie@ag.state.mn.us
*admission *pro hac vice* pending

FOR THE STATE OF NEW JERSEY

GURBIR S. GREWAL
Attorney General

/s/Gwen Farley
By: Gwen Farley
Deputy Attorney General
25 Market Street, P.O. Box 093
Trenton, NJ  08625-0093
Tel: (609) 376-2761
Email: gwen.farley@law.njoag.gov

FOR THE STATE OF OREGON

ELLEN F. ROSENBLUM
Attorney General

/s/ Paul A. Garrahan
PAUL A. GARRAHAN
Attorney-in-Charge
Steve Novick
Special Assistant Attorney General
Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, OR  97301
Tel: (503) 947-4593
Email: Paul.Garrahan@doj.state.or.us
Email: Steve.Novick@doj.state.or.us

FOR THE STATE OF VERMONT

THOMAS J. DONOVAN, JR.
Attorney General

/s/ Laura B. Murphy
LAURA B. MURPHY
Assistant Attorney General
Environmental Protection Division
Vermont Attorney General's Office
109 State Street
Montpelier, VT  05609
Tel: (802) 828-1059
Email: laura.murphy@vermont.gov

FOR THE STATE OF WASHINGTON

ROBERT W. FERGUSON
Attorney General

/s/ Stephen Scheele
STEPHEN SCHEELE
Assistant Attorney General
Washington State Office of Attorney
General
P.O. Box 40109
Olympia, WA  98504
Tel: (360) 586-4900
Email: Steve.Scheele@atg.wa.gov